UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY HEATHER KING,

                                          Plaintiff,

                                                                             Case # 19-CV-6222-FPG

v.

                                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

## INTRODUCTION

Plaintiff Kelly Heather King brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1; ECF No. 16-1 at 2. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 16. For the reasons that follow, the Commissioner's motion is DENIED, King's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

King applied with the Social Security Administration (the "SSA") for DIB and SSI alleging disability beginning in January 2012. Tr.[1] 19, 176, 178. King claimed she is disabled due to drug addiction/dependency, pelvic pain, epilepsy/seizure disorder, panic attacks, anxiety, hypertension, interstitial cystitis, chronic pain, and double carpel syndrome. Tr. 195. In February 2018, King and

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

a vocational expert appeared at a hearing before Administrative Law Judge Jo Ann L. Draper ("the ALJ"). Tr. 19, 30. On June 8, 2018, the ALJ issued a decision finding that King was not disabled. Tr. 19–30. On January 31, 2019, the Appeals Council denied King's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520(a), 416.920(a). After the ALJ issues her decision, the claimant may request that the SSA's Appeals Council review the decision. 20 C.F.R. §§ 404.967, 416.1467. The Appeals Council must consider additional evidence that a claimant submits if (1) the claimant can show good cause for not submitting it to the ALJ; (2) it is new, material, and relates to the period on or before the ALJ's decision; and (3) there is a reasonable probability that it would change the outcome of the decision. *Simon v. Berryhill*, No. 16-CV-4088, 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017); *see also* 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b). Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)).

If the Appeals Council denied review after considering new evidence, the Court "review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). If the Appeals Council did not consider new evidence because it found that the new evidence did not warrant review of the ALJ's decision, the Court reviews whether the Appeals Council erred in refusing to consider the new evidence. *Patrick M. v. Saul*, No. 18-CV-290, 2019 WL 4071780, at *8 (N.D.N.Y. Aug. 28, 2019). "In that analysis, the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the Appeals Council to take the case." *Id.* (internal quotation marks and brackets omitted).

## DISCUSSION

### I. The ALJ's Decision and Appeals Council Review

The ALJ analyzed King's claim for benefits under the sequential evaluation process and concluded that King was not disabled during the relevant period. Tr. 21–30. Following the ALJ's decision, King requested that the Appeals Council remand the matter to an ALJ based on "rebuttal medical opinion evidence." Tr. 173. The Appeals Council denied the request because it found that the "evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." Tr. 2.

**II.     Analysis**

King argues that remand is required because the Appeals Council erred when it declined to consider the new evidence she submitted.[2] ECF No. 10-1 at 17–19; ECF No. 17 at 8–9. The Court agrees.

Because the Appeals Council found that the "evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision," the Appeals Council declined to exhibit the evidence and summarily denied King's request for review. Tr. 2. Accordingly, the Court's task is to determine "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the Appeals Council to take the case." *Patrick M.*, 2019 WL 4071780, at *8 (internal quotation marks and brackets omitted).[3]

The ALJ was confronted with the opinions of two long-term treatment providers who both opined that King was significantly limited because of her mental impairments: Mihai Dascalu, M.D. and Thomas A. Minotti, Ph.D. Tr. 26–27. The ALJ rejected both of their opinions, and both Drs. Dascalu and Minotti wrote letters responding to the ALJ's decision. Tr. 10–11, 13–15. King submitted these letters to the Appeals Council as new evidence. Because these letters undercut the

---

[2] King also argues for reversal of the Commissioner's decision on other grounds. ECF No. 10-1 at 19–23; ECF No. 17 at 2–8. The Court will not reach those arguments because it remands based on the Appeals Council's error.

[3] Because the Appeals Council did not address whether the evidence in question qualifies as "new" evidence or whether King satisfied the "good cause" standard and the Commissioner does not address these issues, Tr. 2; ECF No. 16-1 at 28–30, the Court declines to consider these issues. *See Hissin v. Comm'r of Soc. Sec.*, No. 17-CV-1264, 2019 WL 4253899, at *3 (W.D.N.Y. Sept. 9, 2019) (rejecting Commissioner's argument that claimant did not satisfy good cause standard for new evidence and other arguments "because the Appeals Council did not articulate any of th[o]se reasons to justify its conclusion"); *Simon*, 2017 WL 4736732, at *2 ("When evidence submitted by the applicant did not exist at the time of the ALJ's hearing, there is no question that the evidence is new and that good cause existed for applicant's failure to submit this evidence to the ALJ." (internal quotation marks and brackets omitted)); *Ovitt v. Colvin*, No. 12-CV-1522, 2014 WL 1806995, at *3 (N.D.N.Y. May 7, 2014) (defining new evidence as "any evidence that has not been considered previously during the administrative process" (internal quotation marks omitted)). There can be no reasonable debate that the new evidence in question relates to the relevant period.

4

ALJ's basis for rejecting the opinions of Drs. Dascalu and Minotti, King's new evidence dramatically impacts the weight of the evidence.

The record contains several opinions and statements by Dr. Minotti. On February 24, 2016, he opined that King's pain and emotional reactions to pain render it impossible for her "to work in any capacity." Tr. 375–77. On August 17, 2017, he opined that King's condition was expected to last at least twelve months; that "[a]ll work environments" were contraindicated because of her verbal outbursts, mood disorder, and anxiety; and that she was very limited in several functional areas, such as interacting appropriately with others. Tr. 786. On January 25, 2018, Dr. Minotti opined that King is "chronically and permanently disabled from all work environments due to her mood reactivity (violent outbursts)[,] aggression, and inability to focus/concentrate to complete even the simplest tasks." Tr. 859. Dr. Minotti further opined that King's "prognosis for any normal life functioning is poor and she will require continued medical, psychiatric, and financial support to survive her condition." *Id.*

The ALJ gave Dr. Minotti's opinions "partial weight," but rejected the opinions in substance to the extent he opined that King's mental impairments were disabling.[4] Tr. 26. The ALJ rejected Dr. Minotti's opinions because she found that the evidence did not support ongoing marked to extreme limitations in social interaction. Tr. 26. Although she does not specify what evidence warranted rejecting Dr. Minotti's opinions, the ALJ repeatedly references King's gym attendance as supporting her RFC determination. Tr. 23–28.

---

[4] The ALJ claims to give "the greatest weight" to Dr. Minotti's "earlier opinions" that are consistent with King's ability to "perform simple work with some limitations in [King]'s social interaction." Tr. 26. It is unclear to the Court what opinions the ALJ is referencing. The only notes the ALJ cites do not speak to King's ability to function in a competitive work environment. Further, to the extent these earlier notes can be read positively, in the new evidence provided by King, Dr. Minotti explains that King's "extreme and severe mood reactions" worsened over the past two years as she has been weaned off of certain medications. Tr. 13.

The probative value of King's gym attendance, however, is seriously undermined by King's new evidence. King submitted a letter from Dr. Minotti dated July 24, 2018. Tr. 13. Dr. Minotti again stressed that King suffers from "extreme aggressive and physical outbursts" and it is his "opinion that [King] could never maintain any consistent work outcomes given her emotional and mood issues." Tr. 13–14. He further explained that she has only visited the gym once in the past six months and she only visits the gym "to talk to their wellness trainers and try to walk on the treadmill when and if her pain subsided." Tr. 13. He emphasized that "[s]he now feels safe with the staff at the [gym]." Tr. 14. He further attached gym records, which show that King visited the gym only thirty-one times total between January 1, 2017 and July 19, 2018 and once in the seven months prior to July 19, 2018. Tr. 15. The information Dr. Minotti provided regarding King's gym attendance strongly reinforces hints in the medical records suggesting that King's gym attendance was sporadic. Tr. 822, 829, 830.[5]

The ALJ also references King's care and training of her dogs, her certification as a dog trainer, and treatment notes reporting a pleasant affect and orientation in all spheres. Tr. 23–28. King's ability to care for her dogs and apparent certification as a dog trainer does not appear to be a particularly strong basis for rejecting the opinions of treatment sources. *See Medick v. Colvin*,

---

[5] The Commissioner does not address Dr. Minotti's discussion of King's gym attendance but instead argues that the Court need not address King's "perfunctory" argument regarding Dr. Minotti's letter. ECF No. 16-1 at 30. In her initial brief supporting her Motion for Judgment on the Pleadings, King gives short shrift to Dr. Minotti's letter and his discussion of her gym attendance. ECF No. 10-1 at 10, 17 n.12. However, as discussed below, the new evidence regarding gym attendance is relevant to analyzing the impact of the other evidence submitted by King. Accordingly, ignoring Dr. Minotti's letter would be inconsistent with the Court's obligation to assess "whether the new evidence [presented by King] altered the weight of the evidence before the ALJ so dramatically as to require the Appeals Council to take the case." *Patrick M.*, 2019 WL 4071780, at *8 (internal quotation marks and brackets omitted).

No. 16-CV-341, 2017 WL 886944, at *9–11 (N.D.N.Y. Mar. 6, 2017) (holding that limited activities of daily living did not support ALJ's decision to discount medical opinion).[6]

The ALJ's interpretation of Dr. Dascalu's treatment notes is also undermined by King's new evidence. On January 11, 2018, Dr. Dascalu completed a Psychiatric Functional Assessment. Tr. 791–99. He diagnosed King with panic disorder and opioid dependence in sustained remission. Tr. 791. He also noted that King suffered from "severe anxiety, depression, panic attacks, angry outbursts (intermittent explosive disorder) related to anxiety[, ]trauma[, ]and significant medical problems." *Id.* Dr. Dascalu opined that King was unable to handle the responsibilities and stress of social interaction in competitive employment. Tr. 792. He further opined that she was extremely limited or lacked the ability to function in numerous areas, particularly related to social interaction, stress management, and problem solving. Tr. 792–94.

The ALJ gave Dr. Dascalu's opinion "little weight" because she found that it was inconsistent with Dr. Dascalu's treatment notes, which reflected that King was "doing better" and "doing fairly well." Tr. 27. Although there are certainly treatment notes that are consistent with the ALJ's characterization, the majority of Dr. Dascalu's treatment notes do not provide much detail and many paint a significantly less rosy picture. Tr. 801–57. For instance, on January 23, 2014, King reported that her anxiety had "been hell" and "really, really bad", and Dr. Dascalu

---

[6] Courts in this Circuit have even questioned the merits of an ALJ relying on child rearing activities as a basis for non-disability determinations. *See Harris v. Colvin*, 149 F. Supp. 3d 435, 444–45 (W.D.N.Y. 2016) ("The ALJ furthermore failed to recognize the differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a regular and continuing basis" . . . . (internal quotation marks omitted) (collecting cases)); *see also Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998) ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals, such as attending church and helping his wife on occasion go shopping for their family, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." (internal quotation marks omitted)) Certainly caring for and training a dog is less burdensome than caring for a child. The ALJ's reliance on her dog training is particularly troublesome here, where King allegedly struggles in social interactions, not in interacting with canines.

opined that her anxiety was exacerbated by withdrawal from medication. Tr. 845. On February 4, 2016, King reported that "everything is bad, I've been sick for a month" and that she "can't sleep, crying a lot." Tr. 823. On July 7, 2016, he noted that King "had several blackouts." Tr. 817. On November 2, 2017, Dr. Dascalu noted that King said she was "not doing well." Tr. 803.

To the extent the ALJ's characterization of Dr. Dascalu's treatment notes does not constitute impermissible cherry picking, *see Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."), King's new evidence seriously undermines the ALJ's characterization. On July 25, 2018, Dr. Dascalu, drafted a letter in response to the ALJ's decision. Tr. 10–11. He explained that he does not take King's insurance and sees her on a limited basis for a "medication check," which he describes as the "most limited service [he] can provide." Tr. 10. He claims that he maintains this arrangement with her because he has had a long-standing and successful treating relationship with King and no other psychiatrist in her area would take on her care. *Id.* Dr. Dascalu emphasizes that "King has had some phenomenal accomplishments," such as "staying alive, then avoiding psychiatric hospitalizations." Tr. 11. He explains that his treatment notes are limited because of the treatment setting; the length of time it would take to document all of King's "struggles" and "limitations" revealed in a short visit; and his tendency to focus on King's positive experiences. Tr. 10–11. He explains that he "considered . . . 'doing better' or 'doing fairly well'" to reflect modestly positive experiences, such as avoiding "major crisis," being "able to walk her dog," or being able to "say hi to the 'guys' at the gym several times in one special week." Tr. 11.

The Commissioner argues that Dr. Dascalu's July 25, 2018 letter regarding King's disability is insufficient to override his treatment notes to the contrary. ECF No. 16-1 at 29. The

Commissioner, however, overstates the clarity of Dr. Dascalu's treatment notes and many are clearly in line with Dr. Dascalu's interpretation of his own notes. As discussed above, there are plenty of treatment notes that suggest severe mental health issues. There are even more treatment notes that appear to be in line with Dr. Dascalu's assessment that "doing better" was a relativistic phrase. For instance, certain notes reflect that King was doing fairly well or well overall despite continuing medical issues or pain. Tr. 806, 812. Similarly, on April 23, 2015, Dr. Dascalu noted that King reported feeling "pretty good – for the most part," but also noted "anxiety," that she "still has the crying spells," and that "anger is a problem." Tr. 831; *see also* Tr. 807 (noting that King was doing well in maintaining stability and decreasing her dose of Xanax); Tr. 837 (noting that she presented "surprisingly well considering the recent events"); Tr. 842 (noting that King was suffering from "depression" and "anxiety" but "doing fairly well" "[d]espite last couple of days being rough"); Tr. 851 (noting that "she's 'hanging on'" and "doing fairly well, but anxiety is getting worse").

Accordingly, Dr. Dascalu's letter clarifies and provides context for his treatment notes and is worthy of consideration. *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020) (summary order) ("It would be improper to rely on ["normal"] mental status evaluations to conclude that [the claimant] is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

The Commissioner argues that Dr. Dascalu's letter would not have changed the ALJ's decision because she found that his opinion regarding disability conflicted with the record as a whole. ECF No. 16-1 at 29–30. The ALJ, however, clearly placed great emphasis on her belief that Dr. Dascalu's opinion conflicted with his treatment notes and King's gym attendance. Tr. 27. King's new evidence significantly undercuts those reasons for discounting the opinions of King's

treatment providers and thus dramatically altered the weight of the evidence before the Commissioner. *Patrick M.*, 2019 WL 4071780, at *8. This is particularly so in this case given the deference typically afforded to long-time treatment providers like Drs. Dascalu and Minotti. *See Brown v. Comm'r of Soc. Sec.*, No. 17-CV-1107, 2019 WL 2441862, at *2–4 (W.D.N.Y. June 12, 2019) (holding that Appeals Council erred in failing to consider additional opinion of treating psychiatrist that undercut basis of ALJ's decision); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").[7]

There is certainly conflicting evidence in the record and resolving those conflicts is the province of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Hillman v. Comm'r of Soc. Sec.*, No. 18-CV-339, 2019 WL 4409334, at *4 (W.D.N.Y. Sept. 16, 2019) ("Although the Commissioner may be correct that reasons exist for discounting or rejecting [a medical] opinion, those reasons must be considered in the first instance by the ALJ or the Appeals Council, not by this Court."). However, as courts in this Circuit have found in similar cases, the Appeals Council's failure to consider King's new evidence demands remand. *Lugo v. Berryhill*, 390 F. Supp. 3d 453, 460–61 (S.D.N.Y. 2019) (remanding where Appeals Council rejected new evidence based on reasonable probability standard "[b]ut that rationale fail[ed] to come to grips with the fact that the new evidence undercut[] the stated rationale of the ALJ"); *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218–19 (N.D.N.Y. 2014) (remanding where Appeals

---

[7] Courts in this Circuit have remanded to the Appeals Council because of its failure to explain the rationale for rejecting a treating physician's opinion submitted as new evidence. *E.g.*, *Hissin*, 2019 WL 4253899, at *3–4 ("[L]ike the ALJ, the Appeals Council must provide an explicit analysis of the treating physician's opinion and cannot reject it with boilerplate language." (internal quotation marks omitted) (collecting cases)). Because remand is warranted on other grounds, the Court declines to consider whether this rule applies here where the Appeals Council has summarily rejected "rebuttal" opinion evidence of treatment providers whose opinions were already rejected by the ALJ.

Council cursorily rejected new medical opinion that provided context to earlier medical opinion rejected by ALJ and addressed issues raised by the ALJ in rejecting the earlier opinion); *McIntire v. Astrue*, 809 F. Supp. 2d 13, 22–23 (D. Conn. 2010) (remanding where new medical opinion submitted to the Appeals Council contradicted medical opinion relied upon by ALJ and presented "a reasonable probability" of a different result). "On remand, the Commissioner is free to consider the new evidence along with all the evidence in the record." *Lugo*, 390 F. Supp. 3d at 461.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 16, is DENIED and King's Motion for Judgment on the Pleadings, ECF No. 10, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 2, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court